ANGELA ROSADO, individually and as mother with *patria potestas* over her minor children FRANCISCO, JUDITH and SAUL FLORES Y ROSADO, Plaintiffs and Appellants, *v.* WORKMEN'S RELIEF COMMISSION, Defendant and Appellee.

No. 366. Argued November 12, 1925.—Decided July 29, 1926.

*Leopoldo Tormes* for the appellants. *The Attorney General, C. Llauger Díaz* and *Emilio Aldrey* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

The Workmen's Relief Commission, on June 29, 1923, rendered the following decision:

"In the case of Francisco Flores no application for compensation has been filed by the workman, nor by his heirs or beneficiaries, without which the commission can not consider any claim, according to the law.

"But from the study we have made of the record in the case it would seem that the demand of such document is unnecessary.

"According to the information, Francisco Flores was working as a bricklayer in certain construction works of Francisco Catalá, located at 25th of July Street, Yauco, P. R., on the 20th of December, 1921. While at work some rain fell. A little while later he was overtaken with pneumonia.

"The report of our inspector Barreras says that while Francisco Flores was working a light shower fell which did not alffect the other workmen; that Flores retired half an hour after getting wet, feeling sick, and in the evening he went away; that next morning he was found in a very serious condition and finally died on the 24th at 2 o'clock in the afternoon.

"There is in the record a certificate of death issued by the clerk in charge of the Civil Registry of Yauco, wherein the death of Francisco Flores is certified to as being due to pneumonia.

"In a report of Dr. A. Ramírez Marini on an examination made for the purpose of declaring him a patient for the hospital it is stated that the physician examined workman Francisco Flores on the 22nd of December and found him suffering from a very severe attack of grippe, but as yet there was no complication.

"The evidence we have in this case, which is that hereinbefore stated, would not prove that the death of this workman was caused by a sickness resulting from the work he was performing. The evidence is insufficient to sustain the allegation that might be made in an application for compensation, that death overtook this laborer as a result of an occupational sickness. And this being so, this claim should be dismissed."

On October 1, 1923, the commission rendered another decision as follows:

"In the case of Francisco Flores, 17334, in view of the motion filed by the widow of the deceased workman, the commission decides to re-open the case and thus offer the heirs an opportunity to prove that the sickness and death of the workman originated from the work he was performing, all of the expenses incurred being for the account of the petitioners."

The case having been re-opened, the commission, on the examination of the evidence introduced, finally said:

"In the case of Francisco Flores, 17334, the commission, after

a careful examination of the motion to reconsider that was filed, and the evidence in support thereof submitted, decides to deny the reconsideration for the reason that it does not appear to have been proved that the workman's death was caused by any occupational sickness occurred during the course of his occupation and as a result of the work he was performing.

"The petitioners should be notified hereof."

From this last decision Angela Rosado, as mother with *patria potestas* over her minor children Francisco, Judith and Saul Flores, the offspring of her marriage to Francisco Flores, appealed to the district court, alleging in substance that Francisco Flores, a bricklayer by trade, on the 20th of December, 1921, was working at some construction works of Francisco Catalá; that while he was thus working some rain fell, as a result of which the said workman was stricken with pneumonia, from which he died in the town of Yauco on the 24th day of December, 1921, and that said Flores "in the course of his employment did suffer the accident in question, as a result of which death overtook him, the said workman Francisco Flores having performed no act whereby he, or his successors, are expressly deprived by the law . . .. from receiving any compensation."

The commission answered, denying that workman Francisco Flores had suffered an accident of any kind while at work during the course of his employment and that any accident had brought on the death, alleging, among other defenses, that said Flores died from pneumonia, which is not a sickness originating from or brought about as a result of a bricklayer's work, or during the course of said workman's occupation as such.

The lower court, after an examination of the proceedings before the commission and weighing the evidence *aliunde* introduced by the parties, decided the case from the standpoint of the theory maintained by the defendant; that is, that Flores' death was not caused by a sickness "originated or caught during the course of his employment and as a

result of a bricklayer's work, which was his occupation,'' and dismissed the complaint.

We will transcribe here what the witnesses for the plaintiffs testified to substantially.

Francisco Catalá, who was the workman's employer, described the incident as follows:

''A. Well, he was polishing up a cornice, something like that one, and was handling an apparatus weighing from 70 to 80 pounds, whereupon there fell a heavy shower and when this shower fell all the men on the scaffold came down and went right under the house, and from there I went over to my house to have some coffee, and he said to his fellow-laborers: I go home for I feel sick.—Q. Did he also say that to you?—A. To the other people; when I came back I inquired about him.—Q. Did he not tell you?—A. No, sir; he said it to the other men. · I inquired: Where is Flores? And they said to me: He left because he felt sick . . . Q. Did you see that he got wet?—A. That I did not see, because he got wet and went off; when the heavy shower stopped I went back to the construction works, and there I inquired about him, and they said: He went off because he was working over there and said that he had been overtaken by a pain in his back.''

There is an affidavit signed by this witness in the record of the commission of which the plaintiffs availed themselves when the commission re-opened the case. The witness then said:

''That on the 20th of December, 1921, the said bricklayer was using an apparatus (whose name is unknown to me) to polish the cornice on the front wall of the house, mounted on a scaffold. That the said apparatus must have weighed over twenty pounds, and some time after he had been at this work, and while he was perspiring, there fell a heavy shower which soaked the said workman.

''That I was watching the work done by the said workman and saw him when he got wet, and that forthwith he came down from the scaffold where he was working until the shower passed over.

''That about half an hour after this incident the workman said to me these or similar words: ·'Mr. Francisco, I go home, because my getting wet has made me sick. I felt a chill, and now I have a strong pain in my shoulders,' and that forthwith Francisco Flores,

the workman in question, went off to his house, promising to return to his work on the following day. That the said workman did not return to his work, because he continued ill with pneumonia, dying shortly after.''

Ramón Figueroa, a bricklayer who was working at the same construction works, testified:

''A. That day the only thing that occurred was that he was up above at the façade working and there came down a shower and he got wet, and about ten minutes thereafter he said that he was going because the shower had made him sick; he went off, lay down, and four days after died.''

He also said that Flores ''was handling a mould about two feet long and weighing from 60 to 70 pounds.''

Santia Fabiani testified that she was visiting in the house of Francisco Flores when the latter came in sick; that she heard when he said that he was ill and complained that he had fever. This witness had also signed an affidavit on the same facts which the plaintiffs produced to the commission as an element of their evidence. In this affidavit the witness says that Flores, directly on coming into his house, lay down and spit some blood, and that from that time until twelve o'clock that evening she remained at Flores' house, helping to take care of him, and that during all that night Flores lay in bed, remaining in a serious condition in bed until he died.

Angela Rosado, Flores' wife, stated, among other things:

''A. He got home between three and four o'clock while Sister Santia Fabiani was visiting the house, and we were somewhat shocked at his arrival, because he was accustomed to quit work at five o'clock, and when he came in he said: 'I was caught by this rain, and it made me sick;' and I felt him and he had high fever; but he lay down and the Sister went off and I went in to take care of him.''

The sworn statements of the two physicians, A. Ramírez and José Arrache, who had attended the workman and had deposed before the commission, were admitted without ob-

jection. The former said that from the examination he made of the workman he came to the conclusion that he was suffering from a very severe attack of grippe, and that he did not continue visiting the man because he had to go over to Cabo Rojo, the man being attended thereafter by Dr. Arrache, who stated that he found Flores sick with pneumonia. Both physicians recite that the patient told them that he was working at a house under construction by Francisco Catalá; that it rained suddenly and he got wet and felt sick. Dr. Ramírez said that when he examined Flores he did not notice any complication in the man, but that the grippe might at any time turn into pneumonia.

The other party introduced the testimony of the chief medical examiner of the Workmen's Relief Commission, who explained that catarrhal pneumonia was a disease brought about by micro-organisms existing in the air, not being inherent to the work, nor originated from any occupation. These statements were objected to by the plaintiffs; but leaving aside this testimony the plaintiffs' evidence was not sufficient to establish a causal relation between the workman's sickness and the nature of his employment, nor appearing therefrom anything special that would point to this case as being an exception to the general rule established under similar circumstances in the case of *Crespo* v. *Workmen's Relief Commission*, 33 P.R.R. 794, which reads thus:

"But there is no suggestion of any causal connection between the fact that the plaintiff was perspiring at the time of the shower and the illness that followed. The accident mentioned as the proximate cause of the injury was the sudden shower. The mere fact that the plaintiff was perspiring when the shower came in no wise changes the situation so that it may serve as a basis for establishing an exception to the general rule that excludes accidents caused by atmospheric conditions to which every one is equally exposed."

The testimony of Santia Fabiani that Francisco Flores reached his home with fever, spitting blood shortly after getting wet, is rather an indication that Flores was already

indisposed or subjected to some grippal trouble when he was working, such indisposition or catarrhal trouble being the proximate cause of his disease and death, and not *the act or function inherent to the work, or as a result of the same.*

Mr. Justice Hutchison dissented.